HENRY T. CLARKE, APPELLANT, V. HERMAN KOENIG, APPELLEE.

FILED MARCH 29, 1893. No. 4816.

1. **Specific performance** is not generally a legal right, but rests in the sound, legal, judicial discretion of the trial court.

2. ———: CONTRACTS: EQUITY. A party invoking the equity powers of a court to enforce specific performance of a contract, which he claims is for the sale to him of real estate, must exhibit a contract unambiguous and certain.

3. **Contracts:** DEFAULT OF PARTY ASKING FOR SPECIFIC PERFORMANCE. He who asks a court of equity to specifically enforce what he claims are his rights under a contract, must not himself be in default in his promises in the same contract.

4. **Contract for Sale of Homestead:** SPECIFIC PERFORMANCE: HUSBAND AND WIFE. It is the settled law of this state that the courts will not specifically enforce a contract for the sale of the homestead of a married person, unless such contract is executed by both husband and wife.

5. ———: ———: ———: VALUE OF PROPERTY. The value of the property does not change this rule.

APPEAL from the district court of Lancaster county. Heard below before CHAPMAN, J.

*Pound & Burr,* for appellant :

When the mode agreed upon for fixing the price is not the essence of a contract to convey real estate, and the agreement is substantially for a sale at a fair price, upon a failure of the parties to determine the amount, the court, looking to the substance rather than to the form of the contract, will adopt some other means of arriving at the price, and of thus carrying out the agreement in its essential features. (*Coles v. Peck,* 96 Ind., 333; *Smith v. Peters,* L. R., 20 Eq. [Eng.], 511; *Kelso v. Kelly,* 1 Daly [N. Y.], 419; *Hermann v. Babcock,* 103 Ind., 461; *Hall v. Warren,* 9 Vesey [Eng.], 605; Waterman, Specific Performance, sec. 148; *Fugate v. Hansford,* 3 Litt. [Ky.], 262; *Brown v. Bellows,* 4 Pick. [Mass.], 189; Pomeroy, Contracts, secs. 94, 151; *Jackson v. Jackson,* 1 Sm. & Gif. [Eng.], 184; *Dunnell v. Keteltas,* 16 Abb. Pr. [N. Y.], 205.) A contract of sale, or mortgage, is void only as to the homestead value; as to any excess over this value a sale or mortgage is good, since, in respect to this excess, the property is not a homestead. (*Sargent v. Wilson,* 5 Cal., 504; *Kreamer v. Revalk,* 8 Id., 74; *Dye v. Mann,* 10 Mich., 291; *Ring v. Burt,* 17 Id., 465; *Wallace v. Harris,* 32 Id., 398; *Boyd v. Cudderback,* 31 Ill., 113; *Black v. Lusk,* 69 Id., 70; *State National Bank of Louisiana v. Lyons,* 52 Miss., 181; *Swift v. Dewey,* 20 Neb., 107.) Admitting that the contract was void as to the east half of the lot, still it was validated by the subsequent abandonment of that part of the lot as a homestead. (*Brown v. Coon,* 36 Ill., 243; *McDonald v. Crandall,* 43 Id., 231; *Hewett v. Templeton,* 48 Id., 367; *Vasey v. Board of Trustees,* 59 Id., 188 ; *Hall v. Fullerton,* 69 Id., 448; *Stewart v. Mackey,* 16 Tex., 56; *Jordan v. Godman,* 19 Id., 273.)

*G. M. Lambertson, contra:*

A court of equity will not enforce specific performance where the value of the land to be conveyed is to be fixed

by arbitrators. (*Greason v. Ketelas*, 17 N. Y., 499; *Hurst v. Litchfield*, 39 Id., 379; *Hopkins v. Gilman*, 22 Wis., 479; *Gourlay v. Duke of Somerset*, 19 Vesey [Eng. Ch.], 431; *Agar v. Maclew*, 2 Sim. & Stu. [Eng. Ch.], 419; *Milnes v. Gery*, 14 Vesey [Eng. Ch.], 400: *Blundell v. Brettargh*, 17 Id., 231; *Morgan v. Milman*, 17 Eng. L. & Eq., 203; *City of Providence v. St. John's Lodge*, 2 R. I., 46; *Dike v. Greene*, 4 Id., 286; *Coles v. Peck*, 96 Ind., 339.) A contract to convey the homestead will not be enforced unless signed by both husband and wife. (*Larson v. Butts*, 22 Neb., 370; *Betts v. Sims*, 25 Id., 175; *Aultman v. Jenkins*, 19 Id., 211; *Swift v. Dewey*, 20 Id., 107; *Bonorden v. Kriz*, 13 Id., 121.)

· RAGAN, C.

This is a suit in equity for specific performance, brought in the district court of Lancaster county by Clarke against Koenig on a contract made between the parties, in words and figures as follows:

"Whereas, on or about the 22d day of June, 1887, the C., B. & Q. R. R. Co. caused to be laid on lot 2, in block 31, in the city of Lincoln, a railroad track, and across R street in said city; and whereas said lot 2 is claimed to be owned by Herman Koenig, and by virtue of a tax deed issued about twelve years ago to one George Dana, and said Koenig, having all the right, title and interest of the said tax deed, under and by virtue of *mesne* conveyance, and the said Koenig claims to be the owner of the said lot by virtue of the possession of the said premises under said tax deed, with all the improvements thereon, amounting as is claimed to about $800 or $900, and makes claim to ten years' actual possession of said lot; and whereas said railroad company built said track without obtaining right of way from said Koenig to occupy said lot or having said lot condemned according to law; and whereas one O. P. Dinges claims ownership of said lot by virtue of a

deed from Arta Morgan, of Denver, Colorado, and whereas the said Arta Morgan claims to be the owner of said lot, she having instituted a suit to set aside a deed made to said Dinges on the ground of fraud claiming to have been practiced by said Dinges, whereas H. T. Clarke is ready and willing to purchase said lot when he shall be able to procure a good title therefor from the legal owner; and whereas there are certain lawsuits now pending in the district court of Lancaster county, Nebraska, concerning the said lots and the titles thereto, between said Koenig, Dinges, and Morgan, wherein all of said claims are made: now it is stipulated on the part of the said Koenig and said Clarke that the said Koenig permits and allows the said track to remain temporarily on said lot for the use and benefit of the said C., B. & Q. R. R. Co., conditioned that the said Clarke, at the termination of the lawsuits concerning the said title to said lot, will pay to said Koenig all the damages he may be justly entitled to for the occupancy of said lot till the termination of the lawsuit, and will either purchase the said lot from the legal owner thereof at said time, or will induce said railroad company to have said lot duly condemned or purchased for the use of said road, said Clarke agreeing on his part not to obstruct or molest said Koenig in the occupancy of said lot any more than may be caused by the passing of cars over said lot, and will not allow said engines, cars, or other obstructions, other than the said track and ties thereunder, to remain standing on said lot.   The damages and the amount to be paid said Koenig by said Clarke is to be determined by arbitrators, one to be selected by the said Koenig, and one by the said Clark, and these two to select a third in case of disagreement.   This contract and memorandum is signed in duplicate this 22d day of June, 1887.

"H. T. Clarke,

"In presence of            Herman Koenig.
"L. C. Burr."

The answer sets up amongst others these defenses:

First—That the contract declared on is not one for the sale of the lot therein described, but for the arbitration and payment by Clarke to Koenig damages by reason of Clarke's temporary use and occupancy of said lot pending litigation over the title to the same.

Second—That the lot at the date of said contract was the homestead—occupied as such—of defendant, his wife, and children, and that defendant's wife was not a party to said contract and did not know of or assent to the same.

Third—A cross-claim for damages for the use and occupation of said lot by Clarke under the terms of said contract.

The court below entered a decree dismissing the suit, and rendered judgment in favor of Koenig on his cross-claim. Mr. Clarke brings the cause here by appeal.

The conclusion reached by us renders it necessary to pass upon only two of the many points presented by counsel in the case.

1. We are of opinion that by the terms of this contract, Clarke, when the courts should have decided in whom was the title, was to pay Koenig such damages as arbitrators might decide he was entitled to by reason of his permitting the railroad track to remain on said lot pending the litigation over the title to the same; and to these damages Koenig would be entitled, even if the courts should decide some one of the other claimants was owner of the lot. It follows, therefore, that the action of the court in rendering judgment for the defendant on his cross-claim was right.

Specific performance is not generally a legal right, but rests in the sound, legal, judicial discretion of the trial court. Did the court abuse this discretion in dismissing appellant's suit whatever may be the correct interpretation of this contract? A party invoking the equity powers of a court to enforce specific performance of a contract, which he claims is for the sale to him of real estate, must exhibit

a contract *unambiguous* and *certain;* in such a contract some one must expressly agree to buy and some one expressly agree to sell. The contract sued on is not such a contract. It is, to say the least, doubtful whether the purchase price of this lot was to be fixed by arbitrators. The appellant was allowed to testify that his understanding at the time was that arbitrators should determine both the purchase price of the lot and Koenig's damages for its occupancy by Clarke; while the defendant was allowed to testify that he understood the contract was only for the arbitration of the damages for its occupancy.

Another essential element is lacking in this contract, viz., the absence of an express promise by Koenig to sell and convey this lot to Clarke. How could he make such promise at the time? The courts might decide that Morgan and Dinges, the other claimants, owned it; so Clarke could not and did not under this contract agree to purchase this lot of Koenig, nor did Koenig agree to sell and convey to Clarke. If the parties had intended that if the litigation over this property terminated favorably to Koenig, then he should sell and convey to Clarke, and he should purchase of Koenig, they would doubtless have so expressed themselves in their contract. This court has no right, however, to so extend the contract of the parties by implication as to inject that clause into it.

By the terms of the contract, Clarke, "at the termination of the lawsuit concerning the title to the lot," was to pay Koenig such damages as he might be found entitled to for the occupancy of the lot by the railroad track during the litigation. This litigation terminated February, 1888, but Mr. Clarke did not pay these damages. He even refused to arbitrate them.

He who asks a court of equity to enforce what he claims are his rights under a contract must not himself be in default in his promises in the same contract. We think, therefore, that the learned judge who tried this case was

entirely justified in dismissing the appellant's case under
any construction of the contract.

2. The undisputed evidence in this record is, that at
the date of the contract sued on the lot in question was
the homestead of Koenig, his wife, and five children; that
they had a small dwelling on the lot in which defendant
and his family resided; and that that was their only home.
The wife of defendant was not a party to this contract, and
there is nothing in the record before us showing any con-
duct on her part or that of her husband by which they are
estopped from claiming this property as a homestead.

In *Larson v. Butts*, 22 Neb., 370, the defendant, a mar-
ried woman, signed a contract in and by which, in consid-
eration of $50 paid in cash and $3,700 to be paid to her,
she agreed to sell and convey to plaintiff two lots. She
resided on these lots with a minor child at the date of the
contract. Her husband was not a party to the contract,
and was not living with her. She refused to convey ac-
cording to her agreement and Larson brought suit for
specific performance and obtained a decree as prayed in the
district court. Larson appealed here, and Chief Justice
MAXWELL, speaking for this court, said: "A contract to
convey a homestead entered into by a wife in her own
name will not be specifically enforced, as the statute re-
quires the instrument of conveyance to be signed and ac-
knowledged by both husband and wife." This case is
decisive of the one we are considering; and it is now the
settled law of this state that the courts will not specifically
enforce a contract for the sale of the homestead of a mar-
ried person unless such contract is executed by both hus-
band and wife. The value of the property does not change
this rule.

It follows, therefore, that the decree of the district court
was right, and the same is in all things

AFFIRMED.

THE other commissioners concur.