## PATRICK S. DONAHOE et al.

### v.

## THE CHICAGO CRICKET CLUB et al.

*Opinion filed December 21, 1898.*

1. DURESS—*what not sufficient proof of duress.* Testimony that the wife of the grantor in a warranty deed to a third person, which was intended as a trust deed in favor of the wife if she survived the grantor, had threatened to leave her husband if he did not deed the property to her, and that the husband was afraid to do so for fear she would "turn him out of doors," does not show duress.

2. TRUSTS—*what not sufficient proof of resulting trust.* Evidence that after making a warranty deed the grantor began suits against third parties to recover possession of part of the property, the grantee acting as his attorney, does not show the deed was intended to create a resulting trust in favor of the grantor or his heirs, as against the evidence of such grantee that he held the property in trust solely for the grantor and his wife, or the survivor.

3. HOMESTEAD—*to release homestead, wife must join in deed.* A deed, not signed by the wife, conveying the property upon which she and the grantor reside, passes title to the extent of its value in excess of $1000; but the homestead, unless abandoned or possession given in pursuance of the deed, remains in the grantor, and upon his death descends to his heirs subject to the widow's right of occupancy.

4. SAME—*homestead presumed to continue until another domicile is acquired.* Seven years' absence by a husband from his homestead, during which time the wife remains in possession, is not an abandonment, in the absence of any proof that he had acquired a home elsewhere, and at the end of such period, it being presumed in law he is dead, the homestead descends as provided in the statute.

APPEAL from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

JOHN E. GROVES, and N. R. FINN, for appellants.

SWIFT, CAMPBELL & JONES, and B. F. CHASE, for appellees.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This is a proceeding in chancery, the object of which is to impeach a previous decree in chancery and have an interest in certain real estate in Cook county decreed to

be in the complainants. Upon the hearing below a decree was rendered in favor of the defendants, from which complainants appeal.

It appears that one Sylvester Donahoe was on the 15th day of October, 1883, the owner of certain property in Cook county. He executed a warranty deed to George H. Leonard on October 15, 1883, conveying this property, acknowledging it September 8, 1884. It was recorded on this latter date. It is conceded by all parties to the suit, and by Leonard, that this deed was made to the latter in trust for certain purposes. At the time of its execution Sylvester Donahoe, and his wife, Sarah, lived on the premises, and continued to reside there until March 28, 1885, when he disappeared, and never returned nor was heard of after his disappearance. He left no child or children. Several mortgages were placed upon the property by Leonard thereafter, Sarah Donahoe joining in their execution for the purpose of relinquishing her dower rights, the principal part of the money realized on these mortgages being expended in the erection of improvements on the property. On January 2, 1886, Sarah Donahoe executed a warranty deed to Leonard, releasing her right of dower and homestead. Leonard soon after, in the same month, subdivided the premises into lots, except two parcels of it. On June 9 following, Sarah Donahoe commenced suit in chancery in the circuit court of Cook county, showing the above facts and claiming that the deed by Sylvester Donahoe to Leonard was in trust, for her sole benefit; that before her marriage to Sylvester Donahoe she had been a servant in the family of Leonard; that Leonard was an attorney and Sylvester Donahoe his client; that at the time the deed to Leonard was executed Sylvester's health had become impaired, and was becoming more so on account of his intemperate habits; that the only heirs Sylvester had at that time, besides his wife, Sarah, were brothers, and desiring to secure the property for her benefit and to have some one

of experience to manage it, he made the deed in trust, and that Leonard gave her a writing showing the conditions of the trust. She also alleged that Leonard had left the country, and asked for the appointment of a new trustee. None of the relatives of Sylvester were parties to this proceeding. David Quigg was appointed trustee, and he, as such trustee, filed a petition in the cause, showing a necessity for a sale of his interest, as trustee, in the lots. By the order of court, in compliance with this petition, all the lots except one were sold. The one lot, and the balance of the money in the hands of the trustee, were turned over to Sarah Donahoe and the trustee discharged. The present action is on behalf of the children of a brother of Sylvester Donahoe, and the executor and sole devisee of another brother. Their contention is that they are entitled to their interest in this property as heirs of Sylvester Donahoe, and also, as such heirs, they are entitled to share therein at least to the extent of a homestead interest at the time Sylvester Donahoe disappeared.

It seems to be conceded on both sides that seven years having elapsed after his disappearance on March 28, 1885, Sylvester Donahoe became legally dead,—that is, after March 28, 1892. It is also conceded by defendants below that if the complainants, who were not parties to the former suit, have any rights in the property they are in no way bound by the decree therein entered.

Appellants claim the deed from Sylvester Donahoe was procured by fraud and undue influence. There was testimony to the effect that Sylvester was excessively intemperate and that he was ignorant in many respects, but there was nothing in the evidence to warrant the court in setting the deed aside on the ground of fraud or duress. There was nothing whatever to show that the grantor, at the making of the deed, was intoxicated or that he did not understand the effect of his act. One of complainants' own witnesses, Jane Hogue, was asked, "Do you know whether or not Sarah Donahoe threatened

to leave her husband if he did not deed the property to her after the marriage?" and she answered, "Yes, I do." This was as far as the witness testified, and it certainly falls far short of proving duress.   There was also testimony tending to show that Sylvester was afraid to deed the property to his wife, because "she would have the power, and exercise it, to turn him out of doors."   The master's report, which was approved by the court, upon the subject of duress found that there was no evidence of such "influence, deceit, duress or threats used against said Sylvester Donahoe, either at the date of that deed or at the date of its acknowledgment, or connected at any time with that deed," and we think the evidence fully warranted such a finding.

It was insisted that because Leonard was the attorney of Sylvester, and because of his acts as such, constructive fraud arose out of that confidential relation. Leonard does not appear to have had any interest in the trust property, nor does it appear that any advantage whatever was taken by him after the transaction.

Appellants further contend that the deed to Leonard was intended to, and did, create a resulting trust in the grantor or his heirs.   They rely, in part, to support this claim, upon the fact that after the date of the deed to Leonard, but before the acknowledgment or recording thereof, Sylvester Donahoe, by Leonard, as his attorney, began two suits,—one in chancery and another in ejectment,—against Michael Saunders to recover possession of one of the lots, the contention being that by these suits Sylvester Donahoe was still claiming to be the owner of the property.   The fact that he may have claimed the property after the execution of the deed to Leonard, or that Leonard, the trustee, may have recognized him as interested in the property, cannot be held sufficient to overcome the evidence, which clearly establishes the conveyance of the property from Donahoe to Leonard and the agreement under which Leonard held the title.

Leonard, who had no interest whatever in the litigation, and who, under the ruling in *Bradshaw* v. *Combs,* 102 Ill. 428, may be regarded as a competent witness for his co-defendants, testified: "The deed was given by Sylvester Donahoe to me to hold in trust for the benefit and use of Sylvester Donahoe and Sarah Donahoe, or the survivor of them." He also testified that in no event was he (Leonard) to have any equitable interest in the property. This evidence, in connection with the other evidence in the record, satisfactorily shows that the trust was meant for the sole benefit of the survivor.

It is, however, contended, that upon the death of Sylvester Donahoe, he never having conveyed his homestead in the premises in the mode prescribed by law, the estate of homestead of the value of $1000 descended to his heirs-at-law,—one-half to his widow, Sarah Donahoe, and the other half to his two brothers. At the time of the conveyance from Sylvester Donahoe to Leonard, October 15, 1883, the value of the property was largely in excess of $1000, and, so far as the excess in value above $1000 is concerned, that passed to the grantee in the deed, although the deed was not executed and acknowledged by the wife as provided by the Homestead act. (*Despain* v. *Wagner,* 163 Ill. 598.) But the estate of homestead to the extent in value of $1000 stands upon a different footing. Section 4 of the Homestead act provides: "No release, waiver or conveyance of the estate so exempted shall be valid unless the same is in writing, subscribed by said householder and his wife or husband, if he or she have one, and acknowledged in the same manner as conveyances of real estate are required to be acknowledged, or possession is abandoned or given pursuant to the conveyance." Here, Sarah Donahoe, the wife of Sylvester Donahoe, did not join with her husband in the execution of the deed to Leonard, nor was the possession of the premises abandoned or given pursuant to the deed. It therefore follows that the estate of homestead to the ex-

tent in value of $1000 did not pass by the conveyance, but remained in Sylvester Donahoe. After the execution of the deed Donahoe and his wife continued to reside on the premises until March 28, 1885, when he disappeared and has not been heard of since. It nowhere appears from the record that he acquired a home or domicile at any other place, and the premises upon which he resided when he disappeared continued to be his home and residence until it is proved that he acquired a home and settlement elsewhere. *Behrensmeyer* v. *Kreitz,* 135 Ill. 591; *Moore* v. *Dunning,* 29 id. 130.

As the estate of homestead vested in Sylvester Donahoe did not pass by the deed to Leonard, and as possession was not abandoned or given in pursuance of the conveyance, it is apparent that at the time of his death Sylvester Donahoe was possessed of an estate of homestead in the premises to the extent in value of $1000. That estate descended to his heirs-at-law. (*Kitterlin* v. *Milwaukee Mechanics' Ins. Co.* 134 Ill. 647; *Anderson* v. *Smith,* 159 id. 93; *Wilson* v. *Illinois Trust and Savings Bank,* 166 id. 9.) Donahoe died intestate and without issue, and under the statute one-half of his estate of homestead descended to his wife and the other half to appellants, sole heirs and devisees of two brothers, subject to the right of occupancy by the widow during her natural life. It appears, however, that the widow has abandoned the premises and ceased to occupy them as a homestead. The appellants were therefore entitled to an estate of homestead in the premises of the value of $500 at the time of filing the bill.

The decree of the circuit court will be reversed and the cause remanded for further proceedings in conformity to this opinion.    *Reversed and remanded.*